**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL A. SCHAUB,** | : | |
| **Plaintiff** | : | |
| | : | |
| | : | **CIVIL ACTION NO. 1:CV-03-0980** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| | : | |
| **FULTON PRECISION INDUSTRIES,** | : | |
| **Defendant** | : | |
| | : | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Fulton Precision Industries' Motion for Summary Judgment. (Doc. No. 11.)  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the motion will be granted.

**I.**  **Background**

**A.**  **Factual Background[1]**

Fulton Precision Industries ("Fulton"), Defendant, owns and operates a precision machining business.  Defendant hired Plaintiff Michael Schaub in May 1999 as a quality insurance inspector.  During his employment with Fulton, Schaub was scheduled to work Monday through Thursday, ten hours per day, starting at 4:30 p.m. each day.

Between May 1999, and January 2002, Schaub was absent or tardy from work on at least fifty-one separate occasions.  In October 2001, Schaub received a written warning for poor work

---

[1]  The following are facts taken from the parties' Statement of Material Facts (Doc. Nos. 12, 15).

performance.  In November 2001, Schaub received a written notice regarding his excessive

absenteeism and tardiness.[2]  The November written warning required that Schaub produce a doctor's

excuse for any future absences.

In January 2002, Schaub was absent from work on Monday, January 7, 2002, and Tuesday,

January 8, 2002.  On January 9, 2002, Schaub worked for five hours of his ten-hour shift.  On both

Thursday, January, 10, 2002, and Monday, January 14, 2002, Schaub was absent from work.

Defendant alleges that Schaub's treating physician, Dr. David Kent, excused Schaub from

work on January 8, 2002, and January 9, 2002, because he had eczema rash on his feet.  Likewise,

Defendant contends that Dr. Kent excused Schaub from work on January 10, 2002, because he had

bronchitis and a fever, unrelated to his eczema.  Schaub, however, contends that a note written by Dr.

Kent indicates that he was excused from work for medical reasons from January 7, 2002, until January

15, 2002.

On January 15, 2002, Schaub returned to work at Fulton with a note from Dr. Kent dated

January 14, 2002.  (Doc. No. 16, Ex. B.)  Dr. Kent's note indicated that Schaub was under Dr.

Kent's care as of January 7, 2002, and that Schaub was permitted to return to work on January 15,

2002.  (Id.)  Defendant terminated Schaub's employment on January 15, 2002.  Defendant claims that

it terminated Schaub's employment because of his excessive absenteeism, tardiness, and poor work

---

[2]  The November 7, 2001, written warning listed the following absences and late arrivals as
contributing to the warning: September 5, 2001 (absent); September 11, 2001 (absent); September 18,
2001 (late); September 27, 2001 (late); September 29, 2001 (absent); October 5, 2001 (late);
October 12, 2001 (absent); October 19, 2001 (absent); October 26, 2001 (absent); October 30,
2001 (late); and October 31, 2001 (late).  Schaub does not contest that he was absent or late on the
dates listed in the November warning.

performance.  Schaub contends that Defendant terminated his employment unlawfully in violation of the

Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA" or "Act") because Defendant

retaliated against him for exercising his FMLA protected rights.

### B.    Procedural History

Plaintiff filed a complaint against Defendant on June 12, 2003, alleging that Defendant interfered

with his rights protected by the FMLA and retaliated against him for exercising those rights.  On August

15, 2003, Defendant answered the complaint.

On June 6, 2004, Defendant filed its Motion for Summary Judgment (Doc. No. 11) requesting

dismissal of Plaintiff's claims.  Plaintiff concurred in the dismissal of his FMLA interference claim (Doc.

Nos. 12, 15.)  Plaintiff also concurred in the dismissal of any claim for damages other than lost wages

for the period of January 15, 2002, through October 1, 2003, liquidated damages, interest, attorneys'

fees, and costs.  Id.  Accordingly, Plaintiff's only remaining claim in this action is his claim against

Defendant for unlawful retaliation under the FMLA.  Thus, before the Court is Defendant's Motion for

Summary Judgment requesting dismissal of Plaintiff's claim of unlawful retaliation.

## II.    Standard of Review

For a moving party to succeed on a motion for summary judgment the record must establish

that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Initially, Rule 56(c) imposes a burden on the moving party

simply to point out to the district court that there is an absence of evidence to support the nonmoving

party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  When the moving party has met

this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there

is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Although the nonmoving party's evidence need not

be in a form that would be admissible at trial,  <u>Celotex</u>, 477 U.S. at 324, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>

<u>Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

When ruling on a summary judgment motion, the court's function is not to weigh the evidence

and determine the truth of the matter, but instead the Court must determine whether a genuine issue of

material fact exists for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  A mere

existence of an alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment. <u>Id.</u> at 247.  In determining whether a material issue of

disputed fact exists, the facts and inferences drawn from the facts are to be viewed in the light most

favorable to the nonmoving party. <u>Pollock v. American Tel. & Tel. Long Lines</u>, 794 F.2d 860, 864

(3d Cir. 1986).  To constitute an issue for trial, disputed facts must be both genuine and material.  The

materiality of disputed facts rests on substantive law, and it is the substantive law's identification of

which facts are critical and which facts are irrelevant that governs. <u>Anderson</u>, 477 U.S. at 248.

## III.   <u>Discussion</u>

Plaintiff asserts that Defendant's termination of his employment constituted unlawful retaliation

against him for his exercise of protected rights under the FMLA.  (Doc. No. 1.)  The FMLA was

enacted to provide leave for workers whose personal or medical circumstances necessitate leave in

excess of what their employer is willing or able to provide.  29 C.F.R. § 825.101.  "Eligible" employees

of a covered employer are allowed to take up to 12 weeks of leave for medical reasons, for the birth or

4

adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 C.F.R. § 825.100(a). In particular, the FMLA applies when an employee's own serious health condition makes the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). Employees who take leave pursuant to the statute are entitled to return to the same or equivalent position and benefits as they had previously. An employer who denies an employee these entitlements is in violation of the FMLA. 29 U.S.C. §§ 2614(a)(1), 2615(a); 29 C.F.R. § 825.100(c).

The FMLA makes it unlawful for an employer to "interfere with an employee's rights under the statute, or to retaliate for the exercise of these rights." 29 U.S.C. § 2615(a)(2). To qualify for protected medical leave under the FMLA, a plaintiff must: (1) have worked for a covered employer; (2) have satisfied the Act's service requirements; and (3) have suffered from a "serious health condition." 29 U.S.C. §§ 2611(2), (4), (11); 2612(a). It is undisputed that Defendant was a covered employer in January 2002, and that Plaintiff had met the FMLA's service requirements. Thus, the question before the Court is whether Schaub's foot rash constituted a "serious health condition" within the meaning of the FMLA, permitting him to avail himself of protected rights under the FMLA.

For purposes of this case, a "serious health condition" entitling an employee to FMLA leave means "an illness, injury, or physical or mental condition that involves . . . (2) Continuing treatment by a health care provider." 29 C.F.R. § 825.114(a)(2). A plaintiff may demonstrate that he had a serious health condition that involved continuing treatment in one of five ways, only one of which is relevant here. Specifically, the regulations promulgated by the Department of Labor provide:

(2) Continuing treatment by a health care provider.  A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e. inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition that involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g. physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(2)(i).

Therefore, to demonstrate that he has suffered a serious health condition under the FMLA, a plaintiff must demonstrate that he: (1) suffered incapacity requiring absence of work for more than three days and (2) required subsequent treatment or suffered a subsequent period of incapacity relating to the same condition.  Id.  Viewing the facts in the light most favorable to Plaintiff, the Court concludes that he has failed to establish a question of material fact regarding either element required to sustain a finding that he suffered a serious health condition as defined

by the FMLA.[3]

### A.      Incapacity For a Period of More than Three Consecutive Days

As an initial matter, the Court finds insufficient evidence in the record to support Plaintiff's claim

that he was "incapacitated" for more than three consecutive calendar days as required under the

FMLA.  29 C.F.R. § 825.114(a)(2)(i).  Plaintiff claims that Dr. Kent's medical excuse issued to

Plaintiff on January 14, 2002 indicates that Plaintiff was incapacitated for more than three consecutive

days from his foot rash and that the note excused Plaintiff from work between January 7 and January

15.  (Doc. No. 16, at 3.)  Plaintiff's assertion in this regard misrepresents Dr. Kent's note, which

indicates only that (1) Plaintiff was under Dr. Kent's care on January 7, 2002 for an unspecified reason;

(2) Dr. Kent saw Plaintiff on January 14, 2002; and (3) Plaintiff was cleared to return to work on

January 15, 2002.  (Doc. No. 16, Ex. B.)  Contrary to Plaintiff's interpretation, Dr. Kent's note does

not indicate that Plaintiff was incapacitated from his foot rash.  Indeed, nothing in the note provides any

information at all as to why Dr. Kent saw Plaintiff on January 7, 2002 or

---

[3]      The Court notes that a plaintiff may invoke the protections of the FMLA if he can demonstrate that he suffered from a "chronic" serious health condition.  29 C.F.R. § 825.114(a)(2)(iii)(A)-(C).  A chronic serious health condition is one which: (1) requires periodic visits for treatment by a health care provider; (2) continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) may cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).  Id.  Plaintiff has not claimed that either his foot rash or his bronchitis qualify as "chronic" serious health conditions, nor has he raised this issue in his brief opposing summary judgment; rather, he has argued exclusively that he suffered from a serious health condition as defined in 29 C.F.R. § 825.114(a)(2)(i).  Accordingly, the Court does not consider whether Plaintiff may suffer from a chronic serious health condition as defined under the FMLA for purposes of evaluating the pending motion for summary judgment.

January 14, 2002.[4]  (Doc. No. 16, Ex. B.)

As noted above, under the FMLA a serious health condition is defined, in relevant part, as a "period of incapacity [i.e. inability to work] of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition[.]"  29 C.F.R. § 825.114(a)(2)(i).  In his note dated January 14, 2002, Dr. Kent indicated that Plaintiff was "under [his] care" on January 7, 2002, although the note is silent as to the reason for this care.  Dr. Kent's examination notes indicate that Plaintiff was excused from work on January 8, 2002 and January 9, 2002 due to a foot rash.  (Doc. No. 17, Ex. 1.)  Although he apparently was excused from work on January 9, 2002 due to his foot rash, the parties agree that Plaintiff worked for approximately five hours on that day.  On the basis of this evidence, no reasonable trier of fact could find that Plaintiff was absent from work for any more than 2 ½ days between January 7 and January 9 due to his foot rash.  FMLA regulations define "incapacity" as an "inability to work . . . due to the serious health condition."  29 C.F.R. § 825.114(a)(2)(i) (emphasis added).  It is undisputed that Plaintiff worked for approximately five hours of his scheduled ten-hour shift on January 9.  Accordingly, January 9 cannot properly be counted in calculating Plaintiff's period of

---

[4]      However, it is notable that treatment notes from Dr. Kent's office dated January 14, 2002 do not mention Plaintiff's foot rash.  Instead, the January 14 notes indicate, inter alia, that Plaintiff "has terrible sore throat with cough . . . says [temperature] was up to 104 [degrees] Friday night." (Doc. No. 17, Ex. 1.)  The notes further indicate that Plaintiff requested a prescription for his cough, and perhaps also for sinus and throat conditions.  Accordingly, Plaintiff's claim that he was under constant care between January 7, 2002 and January 14, 2002 due to a foot rash is not only unsupported, but it is contradicted by the evidence of record.

incapacity for FMLA purposes.[5]  See Russell v. N. Broward Hosp., 346 F.3d 1335, 1343-45 (11th

Cir. 2003) (holding that partial days of incapacity do not count towards incapacity period and that the

regulation requires "more than three consecutive whole days of incapacity") (emphasis added).

Further, even assuming, arguendo, that the record contained evidence that Plaintiff missed work

on January 7 due to his foot rash, and additionally assuming that a factfinder could properly find that

January 9 should be included in the calculation of Plaintiff's incapacity notwithstanding the fact that he

worked half of his shift on that day, Plaintiff's FMLA claim would still fail because Plaintiff has not

demonstrated that he was absent from work due to a serious health condition for more than three

consecutive calendar days as required under the regulations.  Thus, Plaintiff's foot rash cannot

constitute a serious health condition under the applicable subsection of the FMLA because it did not

result in a period of incapacity of more than three consecutive calendar days.  29 C.F.R. §

825.114(a)(2)(i).

Although Plaintiff missed additional days of work after January 9, 2002, there is no record

evidence from which a fact finder might conclude that the additional absences were at all related to his

foot ailment.  Instead, the record clearly demonstrates that Plaintiff's subsequent absences related

entirely to bronchitis or related symptoms.  (Doc. No. 17, Ex. 1; Doc. No. 25, at 15.)  As an initial

matter, the Court notes that Plaintiff has never alleged that his bronchitis qualifies as a "serious health

_____

[5]        The Court notes that the only evidence of record as to why Plaintiff did not complete
his shift on January 9 relates not to Plaintiff's eczema, but rather to body aches and cough.  Dr. Kent's
notes dated January 10, 2002 indicate that "Pt. tried to work last night for five hours and [he] had to
come home [because of] body aches and cough (just started last night)."  (Doc. No. 17, Ex. 1.)  This
evidence supports the Court's finding that Plaintiff's ability to work for half of his shift on January 9
should not be considered in calculating his period of incapacity relating to his foot rash.

condition."  Indeed, courts have found that, absent extraordinary circumstances, bronchitis does not constitute a serious health condition under the FMLA.  See, e.g., Beal v. Rubbermaid Comm. Prods., Inc., 972 F. Supp. 1216, 1225 (S.D. Iowa 1997), aff'd, 149 F.3d 1186 (8th Cir. 1998) (holding employee's bronchitis not serious health condition where employee recovered quickly and received no continuing treatment); Cabrera v. Enesco Corp., No. 97 C 5546, 1998 U.S. Dist. LEXIS 9146 (N.D. Ill. June 8, 1998).  It is notable that Plaintiff has not presented any evidence demonstrating that his bronchitis incapacitated him for more than three consecutive calendar days, nor that the bronchitis required multiple treatments by Dr. Kent or any other health care provider, nor that Plaintiff was incapable of caring for himself as a result of the bronchitis.  Accordingly, the Court finds that Plaintiff's bronchitis does not constitute a serious health condition under the FMLA.

For all of the foregoing reasons, the Court finds that Plaintiff has failed to produce evidence that he suffered a period of incapacity of more than three consecutive calendar days necessary to sustain a claim of a "serious health condition" under 29 C.F.R. § 825.114(a)(2)(i).

## B. Subsequent Treatment or Period of Incapacity Relating to the Same Condition

Plaintiff's retaliation claim under the FMLA also must fail because he did not receive subsequent treatment nor incur a further period of incapacity relating to his foot rash following his visit to Dr. Kent on January 8, 2002.  Perhaps recognizing this missing element of his claim, Plaintiff offers the novel argument that he could not receive subsequent treatment for his foot rash because he was discharged upon his return to work on January 15, 2002.  (Doc. No. 16 at 4.)  Apparently, Plaintiff is attempting to argue that his discharge on January 15, 2002 excuses his inability to prove that he

received or required subsequent treatment relating to his foot rash, which is clearly a prerequisite to

finding that Plaintiff suffered from a serious health condition under the subsection of the FMLA relevant

to this action.  29 C.F.R. § 825.114(a)(2)(i) (serious health condition requires both a period of

incapacity of more than three consecutive calendar days "subsequent treatment or period of incapacity

relating to the same condition").  Plaintiff offers no legal authority supporting this argument, and the

Court finds it unpersuasive, particularly in light of the evidence of record.

      Plaintiff's visit to Dr. Kent on January 8, 2002, unequivocally constituted treatment for

Plaintiff's foot rash during which Dr. Kent prescribed a "regimen" of soaking his feet for care.[6]  (Doc.

No. 17, Ex. 1.)  However, the record indicates that in Dr. Kent's medical opinion, Plaintiff only needed

to remain home from work due to his foot rash through January 9, 2002.  (Id.)  Although Plaintiff saw

Dr. Kent on January 10, 2002 for bronchitis, Dr. Kent's testimony and examination notes indicate that

he did not treat Plaintiff for his foot rash during this visit, nor did Dr. Kent even look at Plaintiff's feet at

this time because the rash "wasn't the subject of [Plaintiff's] visit."  (Id.; Doc. No. 25, at 15.)  In fact,

Dr. Kent testified that he suspected that the regimen he prescribed for Plaintiff's foot rash would

resolve Plaintiff's ailment, thus undermining Plaintiff's suggestion that he might have needed subsequent

treatment relating to the foot rash at some unspecified future time.  (Doc. No. 25, at 15-16.)

---

[6]     Prior to January 8, 2002, the record indicates that Plaintiff called Dr. Kent's office complaining of his foot rash.  Dr. Kent's note written for Plaintiff on January 14, 2002, confirms that Plaintiff was "under [his] care" as of January 7, 2002.  (Doc. No. 16, Ex. B.)  However, even if the Court were to deem Plaintiff's January 8, 2002, visit as a "subsequent treatment" to his January 7, 2002 phone call, at the January 8 visit Dr. Kent limited Plaintiff's excused time off from work to January 8 and 9.  Accordingly, Plaintiff still would not satisfy the requirements set forth in 29 C.F.R. § 825.114(a)(2)(i) that he suffer a period of incapacity of more than three days and subsequent treatment or period of incapacity relating to the same condition.  29 C.F.R. § 825.114(a)(2)(i).

Moreover, Dr. Kent's examination notes after January 8, 2002 do not reflect any complaints from Plaintiff regarding his foot rash and do not indicate that Plaintiff sought any subsequent treatment for his feet.  Id.  Indeed, Plaintiff has adduced no evidence showing that he sought treatment for his feet after his visit to Dr. Kent on January 8, 2002.  Accordingly, the Court finds the record devoid of evidence supporting Plaintiff's allegation that he received or required subsequent care relating to his foot rash.[7] For this additional reason, the Court finds that Plaintiff has failed to produce evidence necessary to create a genuine issue of material fact as to whether he suffered from a serious health condition under the FMLA.

## IV.      Conclusion

No evidence of record supports Plaintiff's claim that a material issue of disputed fact exists as to whether he had a "serious health condition" entitling him to exercise rights under the FMLA. Because Plaintiff has not met the threshold requirement for qualifying for protected medical leave under the FMLA, further discussion pertaining to the remaining elements of his retaliation claim is unwarranted and his cause of action will be dismissed.

---

[7]      Plaintiff did seek follow-up care regarding his bronchial symptoms on January 14, 2002.  (Doc. No. 17, Ex. 1.)  However, the Court has already found that under the undisputed facts, Plaintiff's bronchitis does not constitute a serious health condition under the FMLA.  Accordingly, Plaintiff's follow-up visit to Dr. Kent regarding his bronchitis is irrelevant for purposes of evaluating the viability of Plaintiff's retaliation claim under the FMLA.

**V.      Order**

**AND NOW**, this 4ᵗʰ  day of May 2005, for the reasons discussed in the within memorandum,

**IT IS HEREBY ORDERED THAT** Defendant's Motion for Summary Judgment (Doc. No. 11) is

**GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Defendant and to close the

file.

S/ Yvette Kane
Yvette Kane
United States District Judge